T.C. Memo. 2015-232

UNITED STATES TAX COURT

DAVID L. CHARLEY AND JULIA A. CHARLEY, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13516-13.                    Filed December 2, 2015.

David L. Charley and Julia A. Charley, pro se.

<u>Britton G. Wilson</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

PARIS, <u>Judge</u>:  Respondent determined a deficiency of $5,046 in, and a

section 6662 accuracy-related penalty of $1,009.20 in relation to, petitioners' 2010

Federal income tax.[1]  After concessions,[2] the issue for decision is whether

_____

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code of 1986, as amended and in effect for the year in issue, and all Rule
references are to the Tax Court Rules of Practice and Procedure.

[2]Respondent conceded that petitioners:  (1) are entitled to their claimed
(continued...)

[*2] petitioners are entitled to car and truck expenses they reported on the Schedule C, Profit or Loss From Business, attached to their 2010 Federal income tax return.[3]

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulated facts and facts drawn from stipulated exhibits are incorporated herein by this reference. Petitioners resided in Missouri when they filed their petition.

In 2010 Mr. Charley was doing business as LubriDyne--a business he was reestablishing.[4] LubriDyne was an oil purification business and owned equipment valued at over $200,000 that "filtered reclaimed spilled oil to remove particulate, condensated [sic] water, and acid, which depletes oil's lubrication qualities."

---

[2](...continued)
deduction for legal and professional services expenses of $1,221; (2) are not liable for self-employment tax or entitled to the corresponding adjustment to adjusted gross income of one-half of such tax; and (3) are not liable for the sec. 6662 accuracy-related penalty.

[3]Respondent also determined that a portion of petitioners' reported Social Security benefits was taxable. That determination is computational and will not be discussed further.

[4]Mr. Charley's legal and professional services expenses were for the drafting of multiple business service agreements. The attorney who drafted the agreements passed away before trial.

[*3] LubriDyne's target clients were plastic injection molding operators who worked primarily with hydraulic oil.

In 2010 petitioners owned three automobiles--one for Mr. Charley's personal use, one for Mrs. Charley's personal and work use,[5] and a third automobile purchased that year for Mr. Charley's business travel. Petitioners also had access to Mrs. Charley's mother's vehicle for personal use because she lived with them in 2010.

On January 27, 2010, Mr. Charley purchased a 2002 Cadillac DeVille with 63,745 miles because his personal automobile had too many miles on it for business travel and its trunk was not big enough for the equipment's test unit. In 2010 only Mr. Charley drove the Cadillac.

The most effective way for Mr. Charley to pitch LubriDyne was to drive to clients and demonstrate how the equipment worked. He began most trips from his home where he officed and stored his equipment. All of Mr. Charley's business trips were made in the Cadillac. Many of LubriDyne's clients were within a four- to five-hour radius of Mr. Charley's Missouri home although he also visited

---

[5]Mrs. Charley was a nanny and had a round-trip commute of approximately an hour and a half to her employers' home. The disallowed car and truck expenses relate solely to Mr. Charley's business reported on the Schedule C attached to petitioners' return.

**[*4]** clients in Colorado, California, and Wisconsin. If Mr. Charley did not return home at the end of each day, he would either spend the night in his car or drive through the night.[6] When he did stay overnight somewhere, he stayed with friends at their houses. Mrs. Charley did not accompany Mr. Charley on any of his business trips in 2010.

Mr. Charley recorded the point-of-contact, telephone number, date he visited the client, and the client's business address on an index card.[7] Each index card was created at the time of the travel to that client. Although the mileage from Mr. Charley's home to each client was not included on the index cards, most of his client's business addresses included the city and State where the client was located. Some of the index cards record visits to multiple clients in the same geographical area. Mr. Charley's business plan was to generate more income for LubriDyne so he could sell the oil purification equipment and retire.

---

[6]Mr. Charley testified that petitioners had spent $2,500 to rid their home of bed bugs after one hotel stay. Since then, he does not stay at hotels when he travels.

[7]The parties filed a supplemental stipulation of facts after trial. Attached were copies of Mr. Charley's index cards marked as Exhibit 11-P. Respondent objected to the admission of the copies of the index cards on the grounds of hearsay and that petitioners did not lay a proper foundation for the business records exception to hearsay. By order dated May 12, 2014, the Court overruled respondent's objection and admitted the copies of Mr. Charley's index cards as part of the record.

[*5] Mr. Charley drove to Mountain Grove, Missouri, to meet with a client on February 17, 2010, and then on to Flippin, Arkansas, to meet with a client on February 18, 2010. Mr. Charley next met with clients in Sainte Genevieve, Missouri, on February 24 and 25, 2010.

Mr. Charley's next client meetings were in Brownsville, Texas, and Laredo, Texas, on March 4, 2010. He next traveled from his home office to Kansas City, Missouri, on March 9, 2010, and Grandview, Missouri, on March 10, 2010. Mr. Charley then met with clients in Lenexa, Kansas, and Lawrence, Kansas, on March 11 and 17, 2010, respectively. He next met with clients in McPherson, Kansas, on March 18, 2010. Mr. Charley also met with a client in Chesterfield, Missouri, on March 31, 2010.

His next client meeting was in Ames, Iowa, on April 9, 2010. Mr. Charley then traveled to Iowa Falls, Iowa, on April 15, 2010, and to Franklin, Iowa, on April 28, 2010. Mr. Charley's next client meetings were in Indianapolis, Indiana, on April 29, 2010. From there he traveled to meet a client in Nicholasville, Kentucky, on April 30, 2010.

Mr. Charley next traveled to meet clients in Iowa City, Iowa, and Muscatine, Iowa, on May 12 and 13, 2010, respectively. Mr. Charley then traveled to Wisconsin to meet with several clients. He was in Oshkosh on May 27

[*6] and 28, 2010; Walworth on June 2, 2010; and Sheboygan and Janesville on June 3, 2010. Mr. Charley then traveled from his home office to Oklahoma to meet with several clients. He was in Sand Springs on June 17, 2010, and Tulsa on June 18, 2010. Mr. Charley finished the month of June by meeting with a client in Joplin, Missouri, on June 24, 2010.

Mr. Charley's first client meeting in July was in Excelsior Springs, Missouri, on July 7, 2010. He then visited clients in California by way of Denver Colorado, where he met with one client.[8] Mr. Charley met with clients in Chino, Bakersfield, and Fresno, California, on July 14, 20, and 21, 2010, respectively.[9]

Mr. Charley also drove the Cadillac when he helped a friend with a demolition business in 2010. He did not include the mileage driven for the demolition business in his reported car and truck expenses.

---

[8]The index card for Mr. Charley's client meeting in Denver is not dated. Mr. Charley credibly testified that he stopped in Denver en route to California.

[9]Mr. Charley met with two clients in Fresno, California. One client's index card is dated July 21, 2010. The other client's index card is dated "6-21-2010". The Court finds, because of Mr. Charley's credible testimony about his business travel, that the index card dated "6-21-2010" is misdated and that all of Mr. Charley's California client meetings occurred in July 2010.

**[\*7]**  On November 30, 2010, Mr. Charley had a remanufactured transmission installed in the Cadillac.  The invoice for that repair listed the Cadillac's mileage as 130,367.

Petitioners timely filed their 2010 Federal income tax return.  On the attached Schedule C they reported gross receipts or sales of $2,500 and total expenses of $24,713 for a net loss of $22,213.  Petitioners' largest reported expense was car and truck expenses of $20,625.  Petitioners reported 41,250 business miles and used the standard mileage rate for 2010 to calculate their car and truck expenses.[10]

Respondent issued a notice of deficiency to petitioners disallowing their reported car and truck expenses in full for 2010.

OPINION

Generally, the Commissioner's determination set forth in a notice of deficiency is presumed correct, and the taxpayer bears the burden of showing the determination is in error.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Deductions and credits are a matter of legislative grace, and the taxpayer bears the burden of proving entitlement to any deduction or credit claimed on a

---

[10]The standard mileage rate for the business use of a car was 50 cents per mile for 2010.  Rev. Proc. 2009-54, 2009-51 I.R.B. 930.

[*8] return.  INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New

Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).

Under certain circumstances the burden of proof as to factual matters may

shift to the Commissioner pursuant to section 7491(a).  Petitioners did not argue

for a burden shift under section 7491(a), and the record does not establish that the

prerequisites for a burden shift have been met; therefore, the burden of proof

remains theirs.

I.      Sections 162 and 274 Generally

Section 162(a) allows as a deduction all ordinary and necessary expenses

paid or incurred in carrying on any activity that constitutes a trade or business.  To

be "ordinary" the transaction that gives rise to the expense must be of a common

or frequent occurrence in the type of business involved.  Deputy v. du Pont, 308

U.S. 488, 495 (1940).  To be "necessary" an expense must be "appropriate and

helpful" to the taxpayer's business.  Welch v. Helvering, 290 U.S. at 113.

Additionally, for a deduction under section 162, the expenditure must be "directly

connected with or pertaining to the taxpayer's trade or business".  Sec. 1.162-1(a),

Income Tax Regs.

Generally, a taxpayer must keep records sufficient to establish the amounts

of income, deductions, credits, and other items reported on his or her Federal

[*9] income tax return.  Sec. 6001; sec. 1.6001-1(a), (e), Income Tax Regs.  Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930), allows the Court to estimate the amounts of some deductible expenses.  The Cohan rule is not applicable to expenses under section 274(d).  See Sanford v. Commissioner, 50 T.C. 823, 827-828 (1968), aff'd per curiam, 412 F.2d 201 (2d Cir. 1969).

Under section 274(d), a taxpayer must satisfy strict substantiation requirements before a deduction is allowed.  To deduct expenses related to travel, meals and entertainment, gifts, or listed property, the taxpayer must "substantiate by adequate records or by sufficient evidence corroborating the taxpayer's own statement":  (1) the amount of the expense (i.e., mileage); (2) the time and place of the expense; (3) the business purpose of the expense; and (4) in the case of entertainment, the business relationship between the taxpayer and the person being entertained.  Sec. 274(d).  Listed property includes passenger automobiles.  Sec. 280F(d)(4)(A)(i).  To satisfy the requirements of section 274(d) by adequate records, a taxpayer must maintain records and documentary evidence that in combination are sufficient to establish each element of an expenditure or use.  Sec. 1.274-5T(c)(1) and (2), Temporary Income Tax Regs., 50 Fed. Reg. 46016-46017 (Nov. 6, 1985).

**[\*10]** II.    <u>Petitioners' Car and Truck Expenses</u>

Petitioners reported car and truck expenses for 41,250 business miles on the Schedule C attached to their 2010 return.  The clients Mr. Charley met with in 2010, as discussed <u>supra</u>, are documented by the index cards he created contemporaneously for all clients, which were submitted to the Court and made a part of the record over respondent's objection.  At trial Mr. Charley credibly testified that he visited all the clients on his list.[11]  He also credibly testified that he used the Cadillac only for business because he had other automobiles for personal use.

Petitioners reported 41,250 business miles for 2010.  Mr. Charley drove the Cadillac over 66,000 miles in 2010.  He credibly testified that the 41,250 miles reported on the return did not include the miles driven in relation to his friend's demolition business because those miles were not related to LubriDyne.  To account for the fact that the Cadillac was driven more miles than petitioners claimed as an expense for 2010, Mr. Charley also testified that he did not drive directly to a client and then directly home.  Although the Court finds Mr. Charley's testimony credible, business mileage must be strictly substantiated and

---

[11]The client list Mr. Charley referenced at trial was compiled from his contemporaneously created client index cards.

[*11] cannot be estimated solely on the basis of his testimony about driving circuitous routes to visit his clients. See sec. 274(d); Sanford v. Commissioner, 50 T.C. at 827-828.

While Mr. Charley cannot substantiate his business miles with a mere statement about his driving habits, he can substantiate them by "his own statement, whether written or oral, containing specific information in detail" about them and by "other corroborative evidence sufficient to establish" them. Sec. 1.274-5T(c)(3)(i), Temporary Income Tax Regs., 50 Fed. Reg. 46020 (Nov. 6, 1985). The Court finds that Mr. Charley substantiated that he had business mileage expenses for 2010 through his index cards and testimony--although not the amount reported on petitioners' return. See Smith v. Commissioner, 80 T.C. 1165 (1983) (taxpayer substantiated business mileage by producing schedule of his business travel that listed city and State he traveled to and from and dates of travel). While Mr. Charley's travel schedule may have been extreme, such extremity is not a bar to deducting otherwise properly substantiated expenses. See Scully v. Commissioner, T.C. Memo. 2013-229, at *18.

Mr. Charley left from his home office to begin each business trip. He would return home that day, drive through the night to return home the following day, or continue to another client in the same geographic location as the first client on the

[*12] business trip. Mr. Charley's index cards contain the business address for almost every client his visited in 2010. Allowing Mr. Charley the mileage for the shortest routes between his home office and his clients' addresses, the Court finds that petitioners are entitled to car and truck expenses for 13,731 business miles for 2010.[12]

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.

---

[12]Mr. Charley included index cards for Amcor plants in Michigan and Florida. These index cards included addresses and contact information but no dates for when he visited these plants. Each index card has an "X" over the information on the card. Mr. Charley did not testify about trips to Michigan or Florida, and his list of clients visited in 2010 did not include the Amcor plants in Michigan and Florida. Petitioners are not entitled to include the Michigan and Florida index card information in the computation of their 2010 car and truck expenses.